UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY DURLEY,

                              Plaintiff,

        v.                                          Case No. 20-cv-1889-pp

MARY ANN MOORE,

                              Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 30), GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 36) AND DISMISSING CASE

        Plaintiff Timothy Durley, an incarcerated person representing himself, is proceeding under 42 U.S.C. §1983 on an Eighth Amendment claim against a nurse at Waupun Correctional Institution. The plaintiff has moved for summary judgment. Dkt. No. 30. The defendant has opposed that motion and filed her own cross-motion for summary judgment. Dkt. No. 36. The plaintiff opposes the defendant's motion. Dkt. Nos. 44, 46. The court finds that the plaintiff is not entitled to judgment as a matter of law, and that the defendant is entitled to judgment as a matter of law. The court grants the defendant's motion and dismisses this case.

## I.    Facts

### A.    Procedural Background

        The plaintiff filed his complaint on December 21, 2020, alleging that on October 9, 2020, defendant Dr. Mary Ann Moore at Waupun Correctional Institution discontinued his use of an in-cell nebulizer to treat his severe

Case 2:20-cv-01889-PP   Filed 07/11/22   Page 1 of 26   Document 50

asthma because the plaintiff was "hold[ing] it hostage." Dkt. No. 7 at 2. The plaintiff alleged he needed the nebulizer to help him breathe, but that the defendant denied him that treatment and allowed him only the use of inhalers. Id. at 3. He alleged that he wrote to the defendant and Waupun medical staff on October 12, 2020, asking for the nebulizer treatment. Id. He alleged he had "chemical gas[]" in his lungs, was deprived of sleep and had trouble breathing. Id. at 4. For the purposes of screening, the court accepted as true the plaintiff's allegations that he suffers from severe asthma, that the defendant knew the plaintiff needed the nebulizer to treat his asthma and that the defendant nonetheless withheld the nebulizer treatment. Dkt. No. 12 at 5–6. The court allowed the plaintiff to proceed against the defendant on an Eighth Amendment claim about the denial of the nebulizer. Id. at 6. The court denied the plaintiff's motion for a temporary restraining order because he failed to explain why he needed that extraordinary relief to avoid suffering irreparable harm and because he failed to show that this lawsuit was an inadequate remedy at law. Id. at 7–8.

Counsel appeared for the defendant, dkt. no. 15, and the court entered a scheduling order setting deadlines for discovery and dispositive motions, dkt. no. 16. The plaintiff then filed a motion seeking a preliminary injunction. Dkt. No. 17. He sought continuous nebulizer treatment until this case concludes. Id. at 1. The plaintiff filed the motion a second time, dkt. no. 18, this time including a cover letter stating that his "life [was] at risk right now." Id. at 3. The court concluded that the plaintiff again had failed to meet the standard for

injunctive relief because he failed to make a strong showing that he was likely to succeed in this lawsuit. Dkt. No. 21 at 3–4 (citing Ill. Republican Party v. Pritzker, 973 F.3d 760, 762 (7th Cir. 2020), cert. denied, 141 S. Ct. 1754 (2021)). The court also found that the plaintiff again had failed to demonstrate he would suffer irreparable harm without injunctive relief because his own complaint alleged that he was receiving treatment for his asthma. Id. at 4–5. The court denied the plaintiff's motions. Id. at 5–6.

About a week later, on July 23, 2021, the plaintiff moved the court to compel the defendant to answer eight requests for admission and sought sanctions for their alleged failure to respond. Dkt. Nos. 23, 24. The court denied the motion to compel as premature and moot because the defendant had responded to the plaintiff's requests for admission. Dkt. No. 49 at 6-7. The court denied the motion for sanctions because the defendant's behavior was reasonable under the circumstances of the ongoing COVID-19 pandemic and did not warrant sanctions. Id. at 8-9.

On September 16, 2021, the plaintiff moved for summary judgment. Dkt. No. 30. The defendant requested an extension of time to respond to the plaintiff's motion and file her own motion for summary judgment together at one time. Dkt. No. 34. The court granted that motion, dkt. no. 35, and the defendant filed her joint opposition and motion on October 20, 2021, dkt. no. 36.

B.      Factual Background

Both parties filed proposed findings of fact. Dkt. No. 33 (plaintiff), Dkt. No. 38 (defendant). The defendant responded to the plaintiff's proposed facts, dkt. no. 39, but the plaintiff did not respond to the defendant's facts. Instead he filed a reply to the defendant's response to his own facts. Dkt. No. 44. For purposes of this decision, the court will deem admitted the defendant's properly supported facts that the plaintiff failed to contest. See Civil L.R. 56(b)(4); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). The plaintiff also failed to support several of his proposed facts by citing to evidence, as the federal and Local Rules require. See Fed. R. Civ. P. 56(c)(1) and Civil Local Rules 56(b)(1)(C) & (b)(2)(B) (E.D. Wis.). The court will not consider facts that the plaintiff failed to support with evidence in the record.

1.      *The Parties*

The plaintiff was an inmate at Waupun at the time of the events at issue. Dkt. No. 38 at ¶1. The defendant is not a doctor; she is an Advanced Practice Nurse Prescriber at Waupun, where she has worked since July 8, 2019. Id. at ¶2. In that role, the defendant works under the general supervision of the medical director at Waupun to provide medical services to inmates through the prison's Health Services Unit ("HSU"). Id. at ¶4. She evaluates patients, diagnoses their conditions and prescribes treatment and medications. Id.

4

The defendant is familiar with the plaintiff and his asthma. Id. at ¶7. Although she admits that she is not a pulmonologist or respiratory therapist, she opines that based on the severity of his symptoms, he has only a mild case of asthma. Id.; Dkt. No. 40 at ¶8. The defendant asserts that inhalers and nebulizers can be equally effective treatments for a person with asthma. Dkt. No. 38 at ¶17. She avers that nebulizers are not always a more effective treatment for a patient's asthma. Id. She explains that both treatments have advantages and disadvantages, including ease of use.[1] Id.; Dkt. No. 40 at ¶18.

The plaintiff asserts that "a nebulizer is more effective than a[n] inhaler." Dkt. No. 33 at ¶24 (citing Dkt. No. 31-1 at 39, 71). But the medical records he cites in support of this assertion show that both an inhaler and nebulizer relieved his asthma symptoms. On July 10, 2020, the plaintiff reported difficulty breathing and was successfully treated with a nebulizer. Dkt. No. 31-1 at 71. On August 6, 2019, the plaintiff was seen for a headache and his asthma, and the doctor who examined him reported that his "steroid inhaler . . . works good [sic]." Id. at 39.

2.    *The Plaintiff's Nebulizer Restriction*

From August 4 to October 9, 2020, the plaintiff was allowed a nebulizer in his cell to treat his asthma. Dkt. No. 38 at ¶8; Dkt. No. 41-1 at 57. On

---

[1] The court explained in a previous order that "[a] nebulizer is an electric or battery-powered machine that vaporizes liquid asthma medicine into mist that the patient inhales, while an inhaler is a hand-held device that works like an aerosol can to release a 'puff' of mist when the patient activates it." Dkt. No. 21 at 4–5 (citing https://www.hopkinsallchildrens.org/Patients-Families/Health-Library/ HealthDocNew/What-s-the-Difference-Between-a-Nebulizer-and-an-I).

October 9, 2020, a security officer informed the defendant that the plaintiff was abusing his nebulizer by pulling on it and refusing to return it to officers. Dkt. No. 38 at ¶9. The officer told the defendant that the plaintiff had done the same thing more than once. Id. The defendant was not made aware whether the plaintiff damaged or altered the nebulizer. Dkt. No. 31-1 at 2. The officer also told the defendant that the plaintiff was deemed a security threat because he made threats to assault security staff. Dkt. No. 38 at ¶10. The plaintiff was housed in the Restrictive Housing Unit at the time, which the defendant explains requires a higher level of security than general population. Id.; Dkt. No. 11. The plaintiff was issued a conduct report for refusing to turn over his nebulizer and making the threats. Dkt. No. 38 at ¶43; Dkt. No. 41-3. The plaintiff says he was found not guilty of that disciplinary charge. Dkt. No. 33 at P.F.O.F. ##6, 60. But the conduct report shows that on October 12, 2020, the plaintiff was found guilty of disobeying orders. Dkt. No. 41-3.

On October 9, 2020, the defendant discontinued the order allowing the plaintiff to have the nebulizer in his cell because of his "Misuse/Diversion" of his medication. Dkt. No. 38 at ¶11; Dkt. No. 41-1 at 57. The defendant explains that the plaintiff still could receive nebulizer treatments as needed from nursing staff without a doctor's order. Dkt. No. 38 at ¶12; Dkt. No. 40 at ¶13. The defendant recommended an alternative asthma treatment plan; the plaintiff had a current order for a Wixela inhaler twice per day and an Albuterol inhaler four times daily or as needed, and the defendant recommended that he use those inhalers as directed. Dkt. No. 38 at ¶¶13–15; Dkt. No. 41-1 at 49. On

several occasions from at least October 1, 2020, the plaintiff refused to follow the alternative treatment plan. Dkt. No. 38 at ¶15; Dkt. No. 41-1 at 2–44 (documenting the plaintiff's refusal of Wixela inhaler treatments). The defendant avers that by substituting the two inhalers in place of the plaintiff's in-cell nebulizer treatments, his asthma remained controlled and his symptoms were minimal. Dkt. No. 38 at ¶16; Dkt. No. 40 at ¶17; Dkt. No. 41-1 at 48, 50–54.

The plaintiff insists that the defendant discontinued his nebulizer "due to Covid19." Dkt. No. 33 at P.F.O.F. #44; Dkt. No. 45 at ¶9. The evidence he cites in support is a June 17, 2020 email from Nurse Kacyon (who is not a defendant) to the defendant, in which Kacyon wrote that the plaintiff reported "that his nebulizer machine/treatment was discontinued to concerns [*sic*] with Covid spread." Dkt. No. 31-1 at 77. This email was sent four months before the defendant discontinued the plaintiff's nebulizer treatment based on his misuse of the device. A progress note from April 23, 2020 shows that Dr. Jeffrey Manlove (who is not a defendant) spoke with the plaintiff about temporarily suspending use of the nebulizer "to reduce the risk of the infectious aerosols." Dkt. No. 31-1 at 38. Manlove informed the plaintiff that he would receive an alternative treatment and that "eventually he will get his nebulizer back." Id.

3.    *The Plaintiff's HSU Requests*

On October 12, 2020, the plaintiff filed a request for information with the HSU manager complaining about the defendant's discontinuation of his nebulizer "due to [him] hold[ing] it last week." Dkt. No. 38 at ¶18; Dkt. No. 41–

7

1 at 91. He stated that he was "a severe as[th]matic" and that if his nebulizer treatments were not restarted, he "[would] be exhausting [his] remedies." Dkt. No. 38 at ¶18; Dkt. No. 41–1 at 91. The next day, the HSU manager responded to the plaintiff's request and told him he could not "force medical providers to order treatments." Dkt. No. 38 at ¶19; Dkt. No. 41-1 at 91. The HSU manager noted that the defendant "did order replacement therapy for [him]." Dkt. No. 38 at ¶19; Dkt. No. 41-1 at 91.

On October 12, 2020, the plaintiff filed a request for health services requesting that the HSU "give [him his] nebulizer back." Dkt. No. 38 at ¶20; Dkt. No. 41-1 at 92. He complained that the HSU "ha[d] no right to take a[n] as[th]matic nebulizer away" and stated he had been asking for the nebulizer "every day." Dkt. No. 41-1 at 92. On October 14, 2020, the defendant responded and denied his request. Dkt. No. 38 at ¶21; Dkt. No. 41-1 at 92. She explained, "You abused the nebulizer. Use your inhalers as prescribed." Dkt. No. 38 at ¶21; Dkt. No. 41-1 at 92.

The same day he received the defendant's response, the plaintiff filed another request with the HSU manager. Dkt. No. 38 at ¶22; Dkt. No. 41-1 at 88. He asked, "Since Dr. Moore put in another placement order for [his] nebulizer how long until [he could] use [it?]" Dkt. No. 38 at ¶22; Dkt. No. 41-1 at 88. The HSU manager responded to the plaintiff's request five days later, explaining that he had a "current order for inhalers, not nebulizer." Dkt. No. 38 at ¶23; Dkt. No. 41-1 at 88.

8

On November 16, 2020, the plaintiff again requested his nebulizer and stated that the Wixela inhaler was not working. Dkt. No. 38 at ¶24; Dkt. No. 41-1 at 87. The next day, November 17, 2020, he filed another request for the nebulizer, complaining that he was "havin[g] trouble breathing at night [and] after [his] workout." Dkt. No. 38 at ¶25; Dkt. No. 41-1 at 81. Later that day, Nurse Ahlborg (who is not a defendant) saw the plaintiff for a COVID-19 screening after he complained about a sore throat. Dkt. No. 38 at ¶26; Dkt. No. 41-1 at 48. Ahlborg reported that the plaintiff denied any other COVID-19 symptoms and "spent most of the time asking for his nebulizer treatments back." Dkt. No. 38 at ¶26; Dkt. No. 41-1 at 48. Ahlborg reported that the plaintiff's "lungs were perfectly clear, good air exchange, no wheezes." Dkt. No. 38 at ¶26; Dkt. No. 41-1 at 48.

Following this appointment, the plaintiff filed another health services request, complaining that Ahlborg wrongly recorded that the plaintiff "wasn't weezing [*sic*]." Dkt. No. 38 at ¶27; Dkt. No. 41-1 at 82. He alleged that the nurse's test was not accurate because he was told in the past that he was wheezing while working out. Dkt. No. 38 at ¶27; Dkt. No. 41-1 at 82. The plaintiff also filed a request for information, but the writing is light and difficult to read. Dkt. No. 38 at ¶22; Dkt. No. 41-1 at 84. The plaintiff appears to state that a "white shirt" got a restricted housing unit supervisor to take his nebulizer treatment, that "he" was not "even" a doctor or nurse and saying the plaintiff did not want "him" determining whether the plaintiff received his nebulizer treatment. Dkt. No. 41-1 at 84. Nurse York (who is not a defendant)

responded by telling the plaintiff that Ahlborg's assessment did not note any wheezing in the plaintiff's lungs. Dkt. No. 38 at ¶28; Dkt. No. 41-1 at 82. She forwarded the plaintiff's requests for the nebulizer to the defendant to review. Dkt. No. 41-1 at 84.

On November 18, 2020, the defendant responded to the plaintiff's November 16 and 17, 2020 HSU requests and advised him that the in-cell nebulizer treatments would not and could not be renewed or reordered because of the plaintiff's recent abuse of his nebulizer. Dkt. No. 38 at ¶29; Dkt. No. 41-1 at 81, 87. The defendant told the plaintiff that nursing staff would see him "as needed for breathing issues." Dkt. No. 38 at ¶29; Dkt. No. 41-1 at 81, 87. The defendant also put in a request for an advanced care provider to see the plaintiff. Dkt. No. 38 at ¶29; Dkt. No. 41-1 at 81, 87.

The same day (November 18, 2020), the plaintiff asked Nurse Larson (who is not a defendant) for nebulizer treatment as Larson was passing out medication. Dkt. No. 38 at ¶30; Dkt. No. 41-1 at 49–50. Larson noted in her progress notes that the plaintiff was "yelling to other inmates and as [she] got closer he [was] yelling at [her] in complete sentences" requesting nebulizer treatment. Dkt. No. 38 at ¶31; Dkt. No. 41-1 at 50. When Larson informed the plaintiff that his nebulizer treatment had been discontinued, he "[y]elled back [at her] in complete sentences." Dkt. No. 41-1 at 50. Larson informed the plaintiff that "the way he [was] yelling and speaking" showed he was "not in respiratory distress." Id. Larson told the plaintiff she had spoken with a nurse practitioner about his nebulizer treatments, and she told Larson "he [did] not

need it." Id. She reassured the plaintiff that nursing staff would see him if he was in distress and directed him to continue using his Albuterol inhaler. Id. She also told him that "if that doesn't work [nursing staff] can do a nebulizer by protocol." Id. She asked if he was alright, and the plaintiff "[n]odded at [her] and said 'ok.'" Id.

4. *The OC Spray Incident*

On November 18, 2020, the plaintiff filed two additional requests for health services and an information request stating that another incarcerated person was chemically sprayed, which caused the plaintiff to cough and wheeze. Dkt. No. 38 at ¶32; Dkt. No. 41-1 at 77–80. He claimed that he "was deprived from [his] nebulizer treatment." Dkt. No. 38 at ¶32; Dkt. No. 41-1 at 78. The plaintiff's medical chart notes that chemical spray should not be used on him because the chemicals could trigger an asthma attack. Dkt. No. 31-1 at 6, 19–20, 22–23. The plaintiff alleges that the defendant said she was aware of his allegation that he was not seen for twelve hours, "if not days," by a nurse to assess his asthma when the other incarcerated person was chemically sprayed. Dkt. No. 33 at P.F.O.F. #44 (citing Dkt. No. 31-1 at 18). The defendant swears she was not aware of any delay in the plaintiff's treatment, nor was she aware that the plaintiff had been exposed to the chemical spray. Dkt. No. 31-1 at 2–3, 18.

The next day, in response to the plaintiff's November 18, 2020 requests, Kacyon saw the plaintiff in the HSU. Dkt. No. 38 at ¶33; Dkt. No. 41-1 at 51–54. The plaintiff explained that he was exposed secondhand to OC (Oleoresin

Capsicum) spray and wanted nebulizer treatment, which he did not receive. Dkt. No. 38 at ¶33; Dkt. No. 41-1 at 52. He stated he was frustrated that his in-cell nebulizer treatments were discontinued but denied having any lingering breathing issues. Dkt. No. 38 at ¶33; Dkt. No. 41-1 at 52. The plaintiff also stated that "he work[ed] out for hours daily[,] which cause[d] him to want a nebulizer treatment or when he is exposed to OC spray." Dkt. No. 38 at ¶33; Dkt. No. 41-1 at 52. The nurse noted that the plaintiff's breathing was "[u]nlabored" and "[q]uiet" and that the plaintiff "[r]espond[d] with sentences, phrases, words." Dkt. No. 41-1 at 52. His throat was "[p]ink" and [u]nremarkable." Id. at 53. She confirmed that the plaintiff had Albuterol inhaler treatments available and explained that "if he should need a nebulizer treatment emergently then it could be completed per protocol." Id. at 54.

On November 29, 2020, the plaintiff again submitted a health services request and complained that he was wheezing when he was pulled out for his November 19, 2020 assessment with Kacyon. Dkt. No. 38 at ¶34; Dkt. No. 41-1 at 76. He claimed the nurse's assessment was wrong and did not document his wheezing. Dkt. No. 38 at ¶34; Dkt. No. 41-1 at 76. He reiterated that he wheezed when he worked out. Dkt. No. 38 at ¶34; Dkt. No. 41-1 at 76. HSU staff responded to the plaintiff's request by noting that his chart showed his breathing was stable and required no interventions. Dkt. No. 38 at ¶35; Dkt. No. 41-1 at 76. The matter was referred to the HSU manager. Dkt. No. 38 at ¶34; Dkt. No. 41-1 at 76.

### 5. *The Plaintiff's Alternative Treatment*

The defendant avers that she and nursing staff informed the plaintiff that nursing staff could provide him nebulizer treatments as medically necessary, if they determined he had shortness of breath or wheezing. Dkt. No. 38 at ¶36; Dkt. No. 40 at ¶37 (citing Dkt. No. 41-1 at 49, 54, 81, 87). The plaintiff insists that he made the defendant aware that staff was not notifying the nurses to bring him his nebulizer treatment. Dkt. No. 33 at P.F.O.F. ##16–17. But in support he cites a response to his interrogatory in which the defendant swears she *was not* aware of the plaintiff's unfulfilled requests for nebulizer treatment. Dkt. No. 31-1 at 2, ¶7.

The defendant reviewed the plaintiff's medical administration records and confirmed that the plaintiff was not consistently taking his inhalers, which meant that the plaintiff was not realizing their full effects and benefits. Dkt. No. 38 at ¶37; Dkt. No. 40 at ¶38. For example, the defendant notes that the plaintiff consistently refused to take his Wixela inhaler during the weeks after she discontinued the plaintiff's use of the nebulizer in his cell. Dkt. No. 38 at ¶37; Dkt. No. 40 at ¶38 (citing Dkt. No. 41-1 at 2–44, 51). The defendant reiterates that she and nursing staff informed the plaintiff during nursing visits to use both of his inhalers as prescribed. Dkt. No. 38 at ¶38; Dkt. No. 40 at ¶39 (citing Dkt. No. 41-1 at 49–51, 54, 92). She notes that she and HSU staff educated the plaintiff in writing and in person about the importance of consistently taking his medication. Dkt. No. 38 at ¶39; Dkt. No. 40 at ¶40 (citing Dkt. No. 41-1 at 75).

As of March 2021, the plaintiff continued to complain that his inhalers did not work for him. Dkt. No. 31-1 at 57. Nursing staff noted that the plaintiff infrequently requested refills, which showed that "he [was] not us[ing the inhalers] as directed." Id. Nursing staff instructed the plaintiff "that he need[ed] to take his inhalers as directed in order for them to work." Id. The plaintiff asserts that the defendant ignored his requests for his nebulizer. Dkt. No. 33 at P.F.O.F. #52 (citing Dkt. No. 31-1 at 33–34, 41, 46, 53). But two of the progress notes he cites show that nurses (not the defendant) responded to the plaintiff's requests and noted that the plaintiff continuously refused to use his inhalers properly. Dkt. No. 31-1 at 33–34 (June 4, 2021 nursing note that the plaintiff "ha[d] been refusing his wixela inhaler"), 46 (May 3, 2021 nursing note that plaintiff believed "his Wixela doesn't seem to be effective"; plaintiff was referred to an advanced care provider for follow-up). The other notes are from visits that occurred months before the defendant discontinued the plaintiff's in-cell nebulizer treatments. Nonetheless, these notes show that he received nebulizer treatment when he complained about his inhalers not working. Id. at 41 (July 18, 2019 nursing note stating that the plaintiff "did get the nebulizer earlier"), 53 (July 24, 2020 nursing note stating plaintiff had received nebulizer treatment).

The plaintiff asserts that because the defendant discontinued his in-cell nebulizer treatments, he had an asthma attack. Dkt. No. 32 at ¶12; Dkt. No. 33 at ¶48. In support he cites a progress report written by Nurse Taplin (who is not a defendant) on June 4, 2021—eight months after the defendant

discontinued the plaintiff's nebulizer treatments. Dkt. No. 33 at ¶48 (citing Dkt. No. 31-1 at 44). The note says security staff noticed the plaintiff breathing heavily in his cell and brought him to the HSU by wheelchair. Dkt. No. 31-1 at 44. Taplin noted that the plaintiff "was breathing fast and heavy through his abdomen" and administered nebulizer treatment. Id. The plaintiff stated "that he felt better" after the treatment, and security staff took him to a cell for observation. Id.

The defendant avers that it was necessary to remove the plaintiff's nebulizer from his cell because of his abuse of the nebulizer, his security threats and his access to alternative treatments. Dkt. No. 38 at ¶40; Dkt. No. 40 at ¶41. She says the decision to remove the nebulizer from his cell was based on her medical judgment (after review of the plaintiff's medical records) and the risk of harm to himself and staff (given the plaintiff's history of self-harm and threats or aggression towards prison staff). Dkt. No. 38 at ¶42; Dkt. No. 40 at ¶43.

## II.  Discussion

### A.  Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material

fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005).

B.     Eighth Amendment Standard

As explained in the screening order, the court analyzes the plaintiff's claim under the Eighth Amendment, which "protects prisoners from . . . grossly inadequate medical care." Dkt. No. 12 at 4 (citing Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To prove that the defendant violated his rights under the Eighth Amendment, the plaintiff must present evidence establishing that he suffered from "'an objectively serious medical condition'" and that the defendant was "'deliberately, that is subjectively, indifferent'" to that condition. Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662 (7th Cir. 2016) (quoting Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008)). A prison official

shows deliberate indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The plaintiff "must 'establish not only that [the defendant] violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.'" Gabb, 945 F.3d at 1032 (quoting Roe v. Elyea, 631 F.3d 843, 864 (7th Cir. 2011) (italics in original).

Under the Eighth Amendment, an incarcerated person does not have the right to direct his own course of treatment. See Burton v. Downey, 805 F.3d 776, 785 (7th Cir. 2015). An inmate's disagreement "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." Pyles, 771 F.3d at 409 (citing Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006)). But neither may prison officials "doggedly persist[] in a course of treatment known to be ineffective." Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005). To show he is entitled to summary judgment, the plaintiff must present evidence showing that the treatment he received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." Id. at 654 (quoting Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)).

C.    Analysis

The court permitted the plaintiff to proceed on a claim that the defendant deliberately disregarded his severe asthma by discontinuing his nebulizer treatment, which he claimed was necessary treatment for his asthma. Dkt. No.

17

12 at 5–6. The court assumed for the purposes of screening that the plaintiff's asthma was an objectively serious medical condition. Id. at 5 (citing Board v. Farnham, 394 F.3d 469, 484 (7th Cir. 2005); and Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001)). The defendant does not contest that the plaintiff's asthma is an objectively serious medical condition. She asserts, however, that the evidence shows she was not deliberately indifferent to his medical condition. Dkt. No. 37 at 11–14.

The defendant avers, and the plaintiff does not dispute, that the plaintiff's symptoms evinced only a mild case of asthma. Dkt. No. 40 at ¶8. She avers that the inhalers she provided after the plaintiff misused his nebulizer were equally effective treatments for his asthma and that nebulizer treatment is not always more effective than inhalers. Id. at ¶18. The plaintiff had a history of refusing to use his inhalers properly and instead requesting nebulizer treatment. Dkt. No. 31 at 37, 42; Dkt. No. 41-1 at 39–44. Nonetheless, his medical records confirm that he obtained relief from his asthma symptoms through use of inhalers (when used properly) and occasional nebulizer treatment. E.g., Dkt. No. 31-1 at 39, 71.

It is undisputed that the defendant discontinued the order allowing the plaintiff to have a nebulizer in his cell because he misused his medication on October 8, 2020. Dkt. No. 41-1 at 57. The plaintiff asserts that by denying him this treatment, the defendant was deliberately indifferent to his asthmatic symptoms. But the defendant did not prohibit the plaintiff from requesting nebulizer treatment; she merely prohibited him from having a nebulizer in his

cell because he previously had misused it and had threatened staff. The plaintiff still could seek nebulizer treatments from nursing staff without a doctor's order. The defendant and other nursing staff reminded the plaintiff repeatedly that the nebulizer remained available to him. Id. at 50, 54; Dkt. No. 31-1 at 36, 49. His medical records also show that he was given nebulizer treatments by request after the defendant discontinued his in-cell nebulizer. Dkt. No. 31-1 at 33–34, 44. The defendant also switched the plaintiff's daily treatment to the use of two inhalers, which he was allowed to keep on his person. Dkt. No. 41-1 at 49. The plaintiff's medical records show that the defendant altered the plaintiff's treatment based on his actions, not her indifference to his medical condition, and that she still provided the treatment he wanted and an alternative treatment that adequately treated his mild asthma. Although the plaintiff asserts that he preferred in-cell nebulizer treatment, "the Eighth Amendment does not give prisoners the right to demand specific medical treatment." Christopher v. Liu, 861 F. App'x 675, 679–80 (7th Cir. 2021) (citing Arnett v. Webster, 658 F.3d 742, 754 (7th Cir. 2011)). The plaintiff has presented no evidence suggesting that the alternative treatment was "blatantly inappropriate" to treat his asthma. See Greeno, 414 F.3d 654.

Between October 9 and November 29, 2020, the plaintiff filed several requests for information or health services requesting nebulizer treatment for his asthma. Several nurses and the defendant explained that he could not have the nebulizer in his cell because he had misused his medication and that he should use his inhalers as directed. See Dkt. No. 41-1 at 88, 91–92. The

plaintiff's medical records show that he disregarded those directions and continued to request nebulizer treatment instead. Later appointments with nursing staff revealed that he was not wheezing, that he had no difficulty breathing and that his lungs were clear. Id. at 48; Dkt. No. 31-1 at 38, 41. On one occasion, the plaintiff yelled at a nurse in complete sentences about the revocation of his in-cell nebulizer. Dkt. No. 41-1 at 50. The nurse responded that his ability to yell in full sentences showed that his breathing was not labored and that he did not require nebulizer treatment. Id. The plaintiff's records also show that the inhalers provided adequate treatment of his mild asthma, so the nurses were not simply persisting in an ineffective course of treatment. The plaintiff's disagreement with his alternative course of treatment does not demonstrate that the defendant was deliberately indifferent to the plaintiff's asthma. See Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010) (citing Estelle, 429 U.S. at 106) (noting that "mere disagreement with a doctor's medical judgment" is insufficient "to prove deliberate indifference in violation of the Eighth Amendment"); Johnson, 433 F.3d at 1013 (same).

On November 18, 2020, the plaintiff was exposed to secondhand OC spray that had been used on a different incarcerated person. Dkt. No. 41-1 at 77–80. The plaintiff complained that he "was deprived from [his] nebulizer treatment," id. at 78, and did not receive treatment for twelve hours or longer, dkt. no. 33 at ¶44. But the undisputed evidence shows that the defendant never was made aware that the plaintiff had been exposed to the chemical spray or that he had to wait for treatment after being exposed. Dkt. No. 31-1 at

2–3, 18. The defendant cannot be found deliberately indifferent for failing to address a matter of which she personally was unaware. See Garvin v. Armstrong, 236 F.3d 896, 898–99 (7th Cir. 2001) (citing Lanigan v. Vill. of East Hazel Crest, Ill., 110 F.3d 467 (7th Cir. 1997)). Kacyon saw the plaintiff about his complaints the next day and noted that his breathing was unlabored and quiet, his speech was full and his throat appeared normal. Dkt. No. 41-1 at 52–53. She reminded the plaintiff to use his inhalers and that he could request nebulizer treatment for emergencies. Id. at 54. The evidence shows not only that the defendant was not aware the plaintiff was exposed to the chemical spray but also that the nurse who responded (Nurse Kacyon) evaluated the plaintiff's condition, noted he had no issues breathing and reminded him of the treatment available to him. Nothing about this encounter suggests that the defendant (or any nurse) was deliberately indifferent to the plaintiff's asthma after he was exposed to OC spray.

The plaintiff asserts that he often requested nebulizer treatment, but nurses denied him that treatment. But he cites no evidence suggesting that the defendant was aware of an incident in which the plaintiff requested nebulizer treatment that was not provided to him. The evidence instead shows that the defendant and other nurses reminded the plaintiff to use his inhalers as directed and that he could request nebulizer treatment from the HSU for emergencies. The plaintiff's allegations and assertions alone, without evidence in support of those allegations and assertions, do not entitle him to summary judgment and cannot defeat the defendant's motion for summary judgment.

See Beatty v. Olin Corp., 693 F.3d 750, 754 (7th Cir. 2012) (explaining that "*argument* is insufficient to avoid summary judgment; the nonmoving party needs to come forward with *evidence*" (emphasis in original)); see also Cooper v. Haw, 803 F. App'x 942, 946 (7th Cir. 2020) (reaffirming that "argument alone is insufficient to avoid summary judgment").

The undisputed facts also show that the plaintiff did not suffer any cognizable harm from the defendant's treatment decision. See Gabb, 945 at 1032 (noting that plaintiff must prove both constitutional harm and injury or damages to succeed under §1983). The defendant avers, and the plaintiff does not dispute, that the plaintiff could have requested nebulizer treatment in the HSU if he had difficulty breathing after the defendant discontinued his in-cell nebulizer use. Nebulizer treatment was always available to the plaintiff, even though it may have been less convenient than having the nebulizer in his cell. The plaintiff cites no evidence suggesting that his asthma worsened because he did not have at-will access to the nebulizer. The only adverse consequence documented is a progress note from June 4, 2021. The plaintiff was reported as having labored breathing and was brought to the HSU, where he received nebulizer treatment. The progress note does not say what triggered the plaintiff's breathing difficulty. But this incident occurred eight months after the defendant discontinued the plaintiff's in-cell nebulizer in October 2020 and after several reports that he continued not to use his inhalers properly. See Dkt. No. 31-1 at 57; Dkt. No. 41-1 at 49, 51. There is no suggestion that it was the plaintiff's limited access to the nebulizer, rather than misuse of his inhalers

or an external cause, that led to this incident. Moreover, HSU staff brought the plaintiff to the HSU and provided him nebulizer treatment, just as the defendant and multiple nurses had told him would happen.

The plaintiff insists that the defendant discontinued his in-cell nebulizer because of concerns that its use could spread COVID-19. In support, he cites a June 17, 2020 email from Kacyon to the defendant reporting that the plaintiff believed he was not allowed to use a nebulizer because of COVID-19 concerns. Dkt. No. 31-1 at 77. Given that the email was sent to the defendant, it is not evidence that the defendant discontinued the plaintiff's nebulizer because of concerns about COVID-19. And this email exchange occurred four months before the defendant discontinued the plaintiff's in-cell nebulizer treatment because of his misuse of the device in October 2020. Whether the defendant discontinued the plaintiff's nebulizer use months earlier is not relevant to her treatment of the plaintiff's asthma in October and November 2020.

The plaintiff also asserts that the defendant failed to follow prison policies when she discontinued his in-cell nebulizer treatments. Dkt. No. 33 at ¶66. But the complaint does not allege a violation of prison policy, and the court did not allow the plaintiff to proceed on a claim alleging that the defendant's actions violated a prison policy or regulation. The plaintiff is proceeding only on an Eighth Amendment claim challenging the defendant's actions. Dkt. No. 12 at 6. And §1983 protects against only constitutional violations, not violations of prison policies or regulations. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) (quoting Scott v.

Edinburg, 346 F.3d 752, 760 (7th Cir. 2003)). Whether the defendant followed prison policies when she discontinued the plaintiff's in-cell nebulizer treatments is not relevant to the plaintiff's Eighth Amendment claim.

Under the Eighth Amendment, a prisoner "is not entitled to demand specific care . . . [or] the best care possible. [H]e is entitled to reasonable measures to meet a substantial risk of serious harm to h[im]." Forbes v Edgar, 112 F.3d 262, 267 (7th Cir. 1997). The undisputed facts show that the defendant discontinued the plaintiff's in-cell nebulizer treatment because he misused that medication in October 2020. Nebulizer treatment remained available to the plaintiff by request in the HSU. He also was allowed daily use of two different inhalers. The defendant avers, and the undisputed facts show, that the alternative inhaler treatment adequately treated the plaintiff's asthma when used properly. The plaintiff refused to use his inhalers properly and instead requested nebulizer treatment. Nursing staff (including the defendant) were responsive and attentive to the plaintiff's requests for treatment and provided him nebulizer treatment when he insisted the inhalers were not working. The plaintiff's claim against the defendant amounts to disagreement with the treatment she provided. That disagreement does not constitute deliberate indifference under the Eighth Amendment. See Estelle, 429 U.S. at 106–07; Berry, 604 F.3d at 441. Because the undisputed facts show that the defendant did not disregard the plaintiff's medical condition but instead provided an adequate alternative treatment, no reasonable jury would conclude

that she was deliberately indifferent to the plaintiff's serious medical need. Accordingly, the defendant is entitled to judgment as a matter of law.

## III.    Conclusion[2]

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 30.

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 36.

The court **DISMISSES** this case. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under

---

[2] Because the court is granting summary judgment to the defendants on the merits, it need not analyze their qualified immunity argument. See Sierra-Lopez v. County, No. 17-CV-1222-PP, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (citing Viero v. Bufano, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996); and Antepenko v. Domrois, No. 17-CV-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 11th day of July, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**